UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL CASE NO. |
| | : | 3:97-CR-00204 (JCH) |
| v. | : | |
| | : | |
| RONALD PAGAN, | : | JULY 28, 2025 |
|     Defendant. | : | |

**RULING ON MOTION FOR SENTENCE REDUCTION (DOC. NO. 565)**

**I.      INTRODUCTION**

The defendant, Ronald Pagan ("Mr. Pagan"), was sentenced to life in prison for his role in the murder of a young man, Edwin Ramos ("Mr. Ramos"). Mr. Pagan now seeks a reduction in his sentence pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1). See Motion for Sentence Reduction ("Def.'s Mem.") (Doc. No. 565); Supplemental Memorandum in Further Support of Motion for Sentence Reduction ("Def.'s Supp. Mem.") (Doc. No. 582); Reply in Support of Motion for Sentence Reduction ("Def.'s Reply") (Doc. No. 584); Supplemental Memorandum in Response to Government's Sur-Reply ("Def.'s Sur-Sur-Reply") (Doc. No. 599); Supplemental Memorandum in Support of Motion for Sentence Reduction ("Def.'s Second Supp. Mem.") (Doc. No. 616); Supplemental Memorandum in Further Support of Motion for Sentence Reduction ("Def.'s Third Supp. Mem.") (Doc. No. 628); Supplemental Memorandum in Further Support of Motion for Sentence Reduction ("Def.'s Fourth Supp. Mem.") (Doc. No. 629). Mr. Pagan argues that his youth at the time of the offense, his traumatic childhood, and the length of his sentence amount to extraordinary and compelling reasons warranting a reduction in his prison sentence. See Def.'s Mem. at 3. The government opposes the Motion. See Government's Opposition to Motion to

1

Reduce Sentence (Doc. No. 578); Government's Sur-Reply to Motion for Sentence Reduction ("Gov'ts Sur-Reply") (Doc. No. 591).

For the reasons that follow, the Motion is granted.

## II.    BACKGROUND

On March 25, 1997, Ronald Pagan and Ruben Feliciano ("Mr. Feliciano"), both members of the Meriden, Connecticut chapter of Los Solidos street gang, murdered a 16-year-old boy named Edwin Ramos.  Ruling Re. Motion for Sentence Reduction ("Ruling Sentence Reduction") (Doc. No. 549) at 2.  Mr. Pagan, who held the title of "Warlord" within the gang, was responsible for maintaining the gang's stockpile of weapons. Id. at 1.  Upon the suspicion that Mr. Ramos had acted contrary to certain rules of the gang, Nelson Gonzalez ("Mr. Gonzalez"), who was President of the Meriden chapter of Los Solidos, ordered Mr. Ramos murdered. Id. at 2.  Following this order, Mr. Pagan and Mr. Feliciano drove Mr. Ramos to a cemetery, and Mr. Feliciano shot and killed Mr. Ramos. Id. at 2.  Mr. Pagan was the highest-ranking member of Los Solidos who was present at Mr. Ramos' murder. Id. at 13.

On September 1, 1998, a grand jury indicted Mr. Pagan in Count One, with conspiracy to commit a violent crime in aid of racketeering, in violation of section 1959(a)(5) of title 18 of the U.S. Code, in Count Two, with the commission of a violent crime in aid of racketeering and aiding and abetting in violation of section 1959(a)(1) and (2) of the same title, and in Count Three, with using a firearm in relation to a crime of violence, and aiding and abetting, in violation of section 924(c)(1) and (2) of title 18 of the U.S. Code.  See Superseding Indictment (Doc. No. 144).

Beginning on January 19, 1999, the Honorable Peter C. Dorsey presided over Mr. Pagan's trial.  See Dkt. No. 323.  On February 8, 1999, a jury returned a verdict of

guilty on all three counts on which Mr. Pagan had been indicted. Verdict Form (Doc. No. 305).

On April 29, 1999, Judge Dorsey sentenced Mr. Pagan to 120 months imprisonment on Count One, life imprisonment on Count Two, with the sentences to run concurrently, and 60 months on Count Three, to run consecutively to Counts One and Two. See Judgment (Doc. No. 307). The court was required to impose a mandatory minimum sentence of life imprisonment on Count Two and a 60-month sentence to run consecutively on Count Three. See 18 U.S.C. § 1959(a)(1); 18 U.S.C. § 924(c)(1)(A).

Mr. Pagan appealed his conviction and sentence; the Second Circuit affirmed both the conviction and the sentence imposed. United States v. Feliciano, 223 F.3d 102 (2d Cir. 2000). The Supreme Court denied Mr. Pagan's Petition for Writ of Certiorari. Pagan v. United States, 532 U.S. 943 (2001). Mr. Pagan subsequently moved to vacate his sentence, set aside, or correct his sentence pursuant to section 2255 of title 28 of the U.S. Code; this court denied that Motion. Ruling on Motion to Vacate, Set Aside, or Correct Sentence and Motion to Amend (Doc. No. 382).

On September 19, 2005, Mr. Pagan filed an Application for a Petition for Writ of Audita Querela; this court denied that Application. See Ruling on Application for Writ of Audita Querela (Doc. No. 417). On September 23, 2014, Mr. Pagan filed a Motion under the All Writs Act, which was transferred to the Second Circuit. Ruling Re. Motion under the All Writs Act and Motion to Transfer (Doc. No. 439). The Second Circuit denied that Motion. Mandate (Doc. No. 442).

On April 18, 2016, Mr. Pagan petitioned this court to vacate, set aside, or correct his sentence. Pagan v. United States of America, 3:16-cv-00601 (JCH) (Doc. No. 1).

3

Following several extensions of time, Mr. Pagan filed an Amended Motion to Vacate, Set Aside, or Correct Sentence. Pagan v. United States of America, 3:16-cv-00601 (JCH) (Doc. No. 40). This court denied the Amended Motion. Pagan v. United States, 568 F. Supp. 3d 156, 158 (D. Conn. 2021).

On October 16, 2020, Mr. Pagan filed a Motion for Sentence Reduction, arguing that his medical conditions in light of the COVID-19 pandemic, his age at the time of his crimes, his traumatic childhood experiences, and the length of his sentence constituted "extraordinary and compelling reasons" warranting a reduction in his sentence. See Motion for Sentence Reduction (Doc. No. 509). This court denied that Motion, explaining that, "at this time, a reduction in [Mr.] Pagan's sentence would not be appropriate in light of the section 3553(a) factors." Ruling Re. Motion for Sentence Reduction (Doc. No. 549).

On September 8, 2023, Mr. Pagan filed the instant Motion. See Def.'s Mot. On January 30, 2025, this court heard arguments on the instant Motion, taking the Motion under advisement. Minute Entry, January 30, 2025 (Doc. No. 625).

## III.    LEGAL STANDARD

Under section 3582(c)(1)(A) of title 18 of the U.S. Code, as modified by the First Step Act of 2018, an incarcerated defendant may move for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). Pursuant to section 3582(c)(1)(A)(i), a court may not modify a term of imprisonment "once it has been imposed" except in a case where, after exhaustion of administrative remedies, the court considers the applicable section 3553(a) factors and finds that "extraordinary and compelling reasons warrant such a reduction." Id. § 3582(c)(1)(A)(i). "District courts may consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before

4

them." United States v. Fernandez, 104 F.4th 420, 427 (2d Cir. 2024), cert. granted in part, No. 24-556, 2025 WL 1496486 (U.S. May 27, 2025).  The burden is on the defendant to show extraordinary and compelling circumstances are present that warrant a reduction in the defendant's sentence.  See id.; United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021).

IV.    DISCUSSION

    A.    Exhaustion

An inmate may move for a sentence reduction only "after the [inmate] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [inmate]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [inmate]'s facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A).

On February 28, 2023, Mr. Pagan asked the Warden of his facility to reduce his sentence pursuant to section 3582(c).  Def.'s Ex. B (Doc. No. 565-2).  Mr. Pagan never received a response from the Warden and filed the instant Motion on September 9, 2023, which was 30 days after the date of his letter to the Warden.  Def.'s Mem. at 6.  The government accepts Mr. Pagan's representation that he has satisfied the exhaustion requirement.  Gov'ts Opp'n at 23.  Accordingly, the court concludes Mr. Pagan has satisfied the exhaustion requirement, and the court proceeds to the merits of his Motion.

    B.    Extraordinary and Compelling Reasons

Congress, in enacting the First Step Act, did not define "extraordinary and compelling reasons;" however, the Second Circuit has explained "an 'extraordinary' reason is most unusual, far from common, and has little or no precedent," and a

5

"compelling" reason "is both powerful and convincing." Fernandez, 104 F.4th at 428 (cleaned up and citations omitted).

Mr. Pagan argues that several reasons counsel in favor of a reduction in his sentence. Those reasons are his: (1) age at the time of the offense; (2) history of severe childhood trauma; and (3) unusually long sentence, which, separately or in combination, amount to extraordinary and compelling reasons warranting his early release from prison. Def.'s Mem. at 6. The government does not address these arguments directly; instead, the government argues that, even if extraordinary and compelling reasons are present, the section 3553(a) factors show that Mr. Pagan's sentence should not be reduced. Gov'ts Opp'n at 23–24.

### 1. Youth and History of Severe Childhood Trauma

Mr. Pagan, who was 19 years old when he participated in Mr. Ramos' murder, argues that Mr. Pagan's age at the time of the offense and his history of severe childhood trauma amount to extraordinary and compelling reasons favoring Mr. Pagan's release from prison. Def.'s Mem. at 9–13. The government argues that, even if Mr. Pagan's youth and childhood trauma amount to extraordinary and compelling reasons warranting resentencing, Mr. Pagan's sentence should still be life imprisonment under the section 3553(a) factors. See Gov'ts Opp'n at 23–24. While Mr. Pagan presents his age at the time of the offense and trauma separately, the court will consider these arguments together.

A defendant's youth at the time of the offense, especially in connection with a defendant's history of childhood trauma, may amount to an extraordinary and compelling reason suggesting resentencing is appropriate. See United States v. Brooker, 976 F.3d 228, 238 (2d Cir. 2020) ("[the defendant's] age at the time of his

6

crime . . . might perhaps weigh in favor of a sentence reduction."). This is because an adolescent's brain is still developing until sometime in his 20s. United States v. Ramsay, 538 F. Supp. 3d 407, 418 (S.D.N.Y. 2021). Indeed, adolescents forced to make decisions under pressure generally make riskier choices than adults with fully developed brains. Id; see also United States v. Cruz, No. 3:94-CR-112 (JCH), 2021 WL 1326851, at *6 (D. Conn. Apr. 9, 2021) (explaining that scientific evidence strongly suggests late adolescents are more likely to take risks than early adolescents or adults). Mr. Pagan was 15 years old when he joined Los Solidos and 19 years old when he participated in Mr. Ramos' murder. Def.'s Mem. at 14–15. Available scientific evidence strongly suggests that Mr. Pagan lacked certain of the cognitive faculties available to an adult with a fully developed brain.

In addition to being an adolescent, Mr. Pagan was subject to traumatic childhood experiences, including regular emotional and physical abuse. Id. at 13–15. An adolescent, such as Mr. Pagan, who has a history of childhood trauma may experience slowed brain development. Indeed, "[n]eurological studies have concluded that severe childhood trauma is associated with changes to 'the maturation of specific brain structures at particular ages' and a person's 'capacity to coordinate cognition, emotion regulation, and behavior.'" United States v. Rengifo, 569 F. Supp. 3d 180, 194 (S.D.N.Y. 2021) (citing Bessel A. van der Kolk, "The Neurobiology of Childhood Trauma and Abuse," 12 Child Adolesc. Psychiatric Clin. N. Am. 293, 294 (2003)). Even the Sentencing Guidelines provide "[c]ertain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, . . . and familial relationships."

U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 5H1.1.  Thus, Mr. Pagan's decision-making faculties were likely further impaired as a result of the repeated physical and emotional trauma he was subject to during his most formative years.

    Accordingly, the court concludes that Mr. Pagan's age, in combination with his history of childhood trauma, amount to an extraordinary and compelling reason warranting a reduced sentence.  In reaching this conclusion, the court joins a number of District Courts within this Circuit that have similarly concluded a defendant's age and childhood trauma sometimes amount to an extraordinary and compelling reason under the First Step Act.  E.g., United States v. Birkett, No. 90-CR-1063-24 (FB), 2023 WL 4274683, at *5 (E.D.N.Y. June 29, 2023) (reasoning that the defendant, who was 18 and 19 years old at the time of the crimes at issue, had demonstrated extraordinary and compelling reasons warranting a reconsideration of his sentence, in part, because of his age at the time of the offenses); United States v. Morris, No. 3:99-CR-264-17 (VAB), 2022 WL 3703201, at *9 (D. Conn. Aug. 26, 2022) (explaining that the defendant's age, 18 at the time of the offense, and rehabilitation counseled in favor of a sentence reduction); United States v. DeJesus, No. 6-CR-12 (ER), 2022 WL 1154251, at *5 (S.D.N.Y. Apr. 19, 2022) (reasoning that the defendant's age, between 19 to 21 when he committed the offenses, supported the conclusion that extraordinary and compelling reasons warranted a sentence reduction); cf. Brooker, 976 F.3d at 238 ([the defendant]'s age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction.").  The court concludes that Mr. Pagan's age and childhood trauma, together, present an extraordinary and compelling reason warranting resentencing.

8

2.	Unusually Long Sentence

Mr. Pagan argues that his life sentence is unusually long and amounts to an extraordinary and compelling reason warranting resentencing. Def.'s Mem. at 15–17. The government does not address this argument and instead focuses on the section 3553(a) factors, discussed infra. See Gov'ts Opp'n at 23–24.

An unusually long sentence resulting from mandatory minimum requirements may amount to an extraordinary and compelling reason warranting a sentence reduction. E.g., United States v. Lespier, No. 3:98-CR-102 (SVN), 2025 WL 213732, at *3 (D. Conn. Jan. 16, 2025) ("it is clear a sentence of life in prison is an unusually long sentence, among all federal sentences imposed."); United States v. Williams, No. 09-CR-00558 (CM), 2023 WL 4785286, at *8 (S.D.N.Y. July 27, 2023) (concluding that a 25-year mandatory minimum sentence constituted an extraordinary and compelling reason warranting a sentence reduction). Because a mandatory minimum sentence may be considered unusually long and amount to an extraordinary and compelling reason warranting a sentence reduction, the court considers whether Mr. Pagan's sentence, specifically, is unusually long.

Mr. Pagan was 19 when he was arrested and detained; he is nearly 50 years old today. Def.'s Mem. at 15–16. Thus, Mr. Pagan has been in federal custody for the instant offenses for approximately 60 percent of his entire life. In the event Mr. Pagan lives to be 72 years old, he will have spent almost 75 percent of his life in prison. In both scenarios, he will have spent his entire adult life in prison. The year Mr. Pagan was sentenced, 1999, the average length of imprisonment for a defendant whose primary offense category was murder was approximately 17 years. 1999 Federal Sentencing Statistics, 2nd Circuit, U.S. Sentencing Commission, Tbl. 7,

9

https://perma.cc/HD86-7FHY.  Mr. Pagan has already served approximately 30 years in prison with good time credit.  Further, while Mr. Pagan is serving a life sentence, approximately 80-percent of defendants convicted of murder in the federal court system are sentenced to some term of years of imprisonment, not life.  Glenn R. Schmitt, Hyun J. Konfrst, Life Sentences in the Federal System, U.S. Sentencing Commission, 5 (Feb. 2015), https://perma.cc/RT89-DQQL.  The effect is that Mr. Pagan, who the court considers to be at a reduced level of moral culpability for Mr. Ramos' murder in light of Mr. Pagan's age and childhood trauma, will serve significantly more time than the average defendant convicted of murder in the federal system.

In light of the Mr. Pagan's reduced moral culpability, the court concludes that Mr. Pagan's life sentence is unusually long and amounts to an exceptional and compelling circumstance counseling in favor of a sentence reduction.

    C.    Section 3553(a) Factors

The court must now consider whether a sentence reduction is appropriate in light of the factors enumerated in section 3553(a).  Those factors include: "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to: "reflect the seriousness of the offense;" "afford adequate deterrence to criminal conduct;" "protect the public from further crimes of the defendant;" and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(1)–(2).  The court must also consider "the kinds of sentence and the sentencing range established" by the Sentencing Guidelines in effect at sentencing for this category

of offense and defendant;"[1] and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. at § 3553(a)(4)(A) and (6).

1. Seriousness and nature of the offense

Even though the court views Mr. Pagan's moral culpability to be lessoned in light of his age and trauma at the time of the offense, there is no doubt that Mr. Pagan committed a heinous crime. Mr. Pagan, who was ordered by Mr. Gonzalez to kill Mr. Ramos, was furious with Mr. Ramos for supposedly violating Los Solidos' protocols, and Mr. Pagan expressed his willingness to murder Mr. Ramos. Presentence Investigation Report ("PSR") at ¶¶ 8, 10–11. Mr. Pagan picked up Mr. Ramos and Mr. Feliciano and transported them to the site of Mr. Ramos' murder. Id. at ¶¶ 9–12. Following Mr. Ramos' murder, Mr. Pagan left the cemetery only to return to it later so that Mr. Pagan could destroy evidence of the crime. Id. at ¶¶ 15–16. Mr. Pagan played a significant role in the murder of Mr. Ramos. Therefore, it is appropriate that Mr. Pagan should serve a significant term of imprisonment.

2. Sentencing Disparities

A defendant convicted of murder in the federal court system in the fiscal year 1999, served approximately 17 years in prison. See, supra, part IV.B.3. In the fiscal year 2024, the average sentence imposed upon a defendant convicted of murder in the federal court system was about 23 years. 2024 Federal Sentencing Statistics, 2nd Circuit, U.S. Sentencing Commission, Tbl. 7, https://perma.cc/K2EH-EBV6. In view of federal sentencing practices, the court concludes that reducing Mr. Pagan's life

---

[1] The Sentencing Guidelines in effect at the time of Mr. Pagan's sentencing were mandatory and called for life imprisonment. See, supra, part II.

sentence, of which he has already served approximately 30 years with good time credit, would not create an unwarranted disparity between Mr. Pagan and similarly situated offenders. Further, the court concludes that it is appropriate to reduce Mr. Pagan's sentence to bring it closer to the averages just discussed.

        3.      Deterrence, Protection of the Public, and Correctional Treatment

Mr. Pagan's disciplinary record while imprisoned for the offenses at issue is far from exemplary. As the government observes, Mr. Pagan has received 41 disciplinary tickets while incarcerated. Gov'ts Opp'n at 25; Gov'ts Ex. A (Doc. No. 580-1). Several of these disciplinary tickets arose from Mr. Pagan's possession of makeshift weapons and other contraband, both of which last occurred in 2021, participation in fights, which last occurred in 2012, and striking a correctional officer, which occurred in 2009. Gov'ts Opp'n at 19, 25–26; Gov'ts Ex. A. However, as Mr. Pagan observes, he received the majority of his tickets prior to 2013, Def.'s Mem. at 18, and the government conceded at the hearing on the instant Motion that it has no reason to doubt Mr. Pagan's claim that he has not received any disciplinary tickets for the past 40 months. See Pagan Tr. at 57:25–58:4. Following that hearing, which occurred in January 2025, the court has conferred with a member of the United States Probation Office, who confirmed that Mr. Pagan has remained ticket free, meaning he has not received a disciplinary ticket for the past 46 months.

Aside from Mr. Pagan's mixed disciplinary record, there are other indications that he has attempted to rehabilitate himself. Specifically, Mr. Pagan has completed over 40 courses and has obtained UNICOR employment, in which Mr. Pagan works from 7:30 am to 2:30 pm each Monday through Friday. Def.'s Mem. at 18; Def.'s Ex. A (Doc. No.

565-1; Supplemental Memorandum in Further Support of Motion for Sentence Reduction, Def.'s Ex. A (Doc. No. 628-1).

In the court's view, Mr. Pagan's record demonstrates his gradual commitment to rehabilitation. He has obtained steady employment while in prison, completed dozens of courses, and remained ticket free for over three years. On this basis, the court accepts Mr. Pagan's representation that he is not the same person he was when he was first arrested for the instant offenses in 1997. See Def.'s Mem. at 15. As a result, the court concludes that Mr. Pagan poses a lessoned danger to the public today than when he was first sentenced, suggesting that a reduction in Mr. Pagan's sentence is appropriate.[2]

### 4. Personal History and Characteristics

Mr. Pagan was subject to routine physical and emotional abuse as a child and adolescent. See, supra, part IV.B.1. It cannot be doubted that experiences of such abuse left a lasting mark on Mr. Pagan, which likely played a role in his decision to join a violent street gang when he was 15, and to participate in Mr. Ramos' murder when he was 19. See id. Despite certain traumas, however, Mr. Pagan's childhood also included positive experiences. Both of Mr. Pagan's parents worked and provided Mr. Pagan with educational opportunities and religious instruction. PSR at ¶ 59. Accordingly, the court will consider Mr. Pagan's childhood trauma as one factor when considering whether a reduction in his sentence is appropriate, but the weight of this factor in favor of resentencing is somewhat reduced in light of the positive aspects of Mr. Pagan's upbringing.

---

[2] The court will docket a supplement to this Ruling further discussing certain of the factors listed in sub-part IV.C.3, which provide further support for the court's conclusion here.

13

Mr. Ramos' mother addressed the court during a hearing to consider the instant Motion. She spoke eloquently about the tragic murder of her son and how his murder amounts to an irreparable loss for her and her family. Pagan Tr. at 67:1–8. However, Mr. Ramos' mother recalled that, on the day Mr. Pagan was sentenced, he apologized to her for murdering her child. Id. at 63:24–3. Sometime before the hearing, Mr. Ramos' mother spoke with Mr. Pagan for the first time. Id. at 67:18–21. During their conversation, Mr. Pagan apologized for what he had done to Mr. Ramos and to Mr. Ramos' family. Id. In recounting her conversation with Mr. Pagan, Mr. Ramos' mother assessed Mr. Pagan's apologies to have been earnest. Id. at 69:4–13. The court concurs with Mr. Ramos' mother that Mr. Pagan has accepted responsibility for the murder of her son, which weights in favor of a reduction in Mr. Pagan's sentence.

The court incorporates its discussions of Mr. Pagan's history of rehabilitation while imprisoned. Though Mr. Pagan's history of rehabilitation is imperfect, the court concludes that Mr. Pagan has made significant progress in rehabilitating himself, which counsels in favor of reducing his sentence.

\*     \*     \*

During the hearing on the instant Motion, Mr. Ramos' mother expressed her wish that Mr. Pagan be released from prison one day. She explained, "I believe in second chances . . . [because] if it would have been my son, . . . I wouldn't want for [him] to die in prison. I would have wanted . . . [him] to have an opportunity to show that [he] could change. How are we going to know if we don't give them the opportunity?" Id. at 68:17–23. The court is persuaded by the thoughtful and powerful comments of Mr. Ramos' mother. While Mr. Pagan's offenses are heinous, a reduction in Mr. Pagan's

sentence is appropriate in light of the extraordinary and compelling reasons discussed above and in consideration of all of the application section 3553(a) factors.

## V.   CONCLUSION

The court concludes that extraordinary and compelling reasons exist such that a reduction in Mr. Pagan's sentence is warranted. After carefully considering all of the applicable section 3553(a) factors, the court concludes that it is appropriate to reduce Mr. Pagan's sentence. On Count One, the court reimposes a sentence of 120 months imprisonment, a sentence Mr. Pagan has already served, concurrent with his first 120 months served on Count Two. To the extent the original sentencing Judge provided for a sentence of 60 months imprisonment on Count Three, to be served consecutively to the sentences imposed on Count One and Count Two, the court orders the sentence on Count Two as time served as of four months ago, March 28, 2025, and the sentence on Count Three to be time served as of September 17, 2025. This sentence is sufficient, but not greater than necessary to achieve the purposes of sentencing and is based on the court's finding of extraordinary and compelling circumstances. The court directs the Bureau of Prisons to release Mr. Pagan from its custody on September 17, 2025.

The court places Mr. Pagan on a 3-year term of supervised release on Count One and a 5-year term of supervised release on Counts Two and Three, all to run concurrently. As a special condition of Mr. Pagan's supervised release, he must reside in a Residential Reentry Center for the first two months of his release from prison. The Clerk is directed to issue an Order Reducing Sentence consistent with this Ruling, which Order will set forth all conditions of supervised release, including the additional special condition of supervised release of two months in a Residential Reentry Center. The reason for imposition of this special condition is to permit Mr. Pagan a period of

15

time to adjust to living in the community after decades of being incarcerated.  This Order Reducing Sentence will specify the terms of the special, mandatory, and standard conditions to which Mr. Pagan will be subject on supervised release.  In the next two months, the court requests the United States Probation Office to review the Order Reducing Sentence, discuss the conditions with Mr. Pagan, and his counsel, and then recommend any conditions that should be added, modified, or deleted.

For the reasons stated above, and in the sealed Supplement, the court grants the Motion to Reduce Sentence (Doc. No. 565).


**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of July 2025.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge